357 So.2d 1111 (1978)
STATE of Louisiana
v.
Curtis Lee STEWART.
No. 60935.
Supreme Court of Louisiana.
April 10, 1978.
*1113 George M. Strickler, Jr., New Orleans, Jerry A. Kirby, Kirby & Anzalone, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Blaine Adkins, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Curtis Lee Stewart was charged by bill of information with the crime of possession with intent to distribute a controlled dangerous substance, to-wit: marijuana, in violation of La.R.S. 40:966. After trial by jury, defendant was found guilty as charged and was sentenced to serve three years at hard labor and to pay a fine of $1,500 and court costs, in default of which he was to serve one year in jail. Payment of the fine was suspended but not that of the court costs. Defendant was given credit toward service of his sentence for time spent in actual custody prior to imposition of sentence. On appeal, defendant relies on nine assignments of error for reversal of his conviction and sentence.

ASSIGNMENTS OF ERROR NOS. 1 AND 3
Defendant contends the trial judge erred in ruling at the preliminary examination that there was probable cause to charge defendant with the instant offense.
It is well settled that the question of probable cause and errors alleged to have occurred at the preliminary hearing are moot once a defendant has been tried and convicted by a jury. State v. Qualls, 353 So.2d 978 (La.1977); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Sneed, 328 So.2d 126 (La.1976); State v. Luckett, on rehearing, 327 So.2d 365 (La.1976). Accordingly, these assignments of error present nothing for our review.
Assignments of Error Nos. 1 and 3 are without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 7
Defendant contends the trial judge erred in denying his motion to suppress physical evidence and in permitting its introduction at trial.
The pertinent facts are as follows.[1] During the previous evening and early morning hours of November 21, 1976, Officer Isaac Robinson, Jr., of the Monroe City Police Department had been on the lookout for Charles Edward Jackson who had escaped from the parish jail. At about 7:30 a. m., while driving his personal vehicle home after completion of his shift, Officer Robinson observed a 1965 red Chevrolet traveling ahead of him in the same direction. As Robinson passed the vehicle, he noticed that the driver of the vehicle was defendant, whose street name was "Sleepy." Two passengers, whose faces the officer was unable to see, occupied the back seat of the vehicle. Upon seeing the uniformed officer, defendant slowed down and changed lanes. Suspecting that the escaped prisoner might have been a passenger in the vehicle, Officer Robinson radioed the Ouachita Parish Sheriff's Office for assistance, which in turn notified Deputy Sheriff Lester A. Edwards, an officer on patrol in a marked *1114 police car in the vicinity, that an escaped prisoner was believed to be a passenger in the 1965 red Chevrolet. Immediately after receiving the radio dispatch, Deputy Edwards spotted defendant's vehicle, which was traveling at a normal rate of speed, being followed by Officer Robinson in his unmarked car. The deputy followed behind the vehicles. Shortly thereafter, defendant executed a series of turns down various streets in an apparent attempt to evade the officers. As Deputy Edwards passed Officer Robinson's vehicle, defendant accelerated to a high rate of speed, driving recklessly and failing to stop at any of the stop signs. Deputy Edwards thereupon activated the flashing red light on his vehicle and pursued defendant's car. After tracking defendant's vehicle by means of the tire marks left by the speeding car, the deputy turned onto a dead-end street where he discovered defendant standing near a trash barrel. As the deputy alighted from his vehicle, defendant fled behind the residences located on the street. Edwards then proceeded to defendant's parked vehicle at which time a resident in the area, Freddie Coleman, informed the deputy that he had observed defendant exit his vehicle, open the trunk, remove a large brown bag bearing red lettering which defendant threw into the trash barrel, and flee. After a search of the area, defendant was apprehended by Deputy Edwards behind one of the residences on the street, placed under arrest for the reckless operation of a vehicle and for resisting an officer, and advised of his rights. Defendant related to the police that he had dropped off his two passengers. Meanwhile, Officer Robinson arrived at the scene and observed that the door of the driver's side and the trunk of defendant's vehicle were partially opened. Fearing that the suspect might have concealed himself in the trunk, the officer drew his revolver and looked inside; he did not discover anyone. He did, however, detect a strong odor of marijuana coming from inside the trunk. Thereafter, upon determining in which direction defendant had fled when confronted by Deputy Edwards, Robinson discovered and seized a box and a large brown bag bearing red lettering, both of which contained marijuana weighing approximately fourteen pounds, from the trash barrel located near where defendant was confronted by the deputy. Based upon the foregoing facts, a warrant authorizing a search of defendant's vehicle was issued which, when executed by the police, resulted in the recovery of a marijuana cigarette, seeds and gleanings from the trunk and interior of defendant's vehicle.
La.Code Crim.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence, and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;

. . . . .
In the instant case, based upon the belief that defendant's vehicle might contain a recently escaped prisoner from the parish jail, coupled with the suspicious manner in which the vehicle was operated by defendant upon his observing the police officers, we consider that the police officers had at least the right to follow and to keep defendant's vehicle under surveillance. At first, defendant's vehicle proceeded at a normal rate of speed. Shortly thereafter, defendant began to accelerate to a high rate of speed, driving recklessly and failing to stop at any of the stop signs. Deputy Edwards specifically stated that he did not activate the red light on his vehicle until "after" defendant "accelerated and started driving at a high rate of speed." After tracking defendant's vehicle to a dead-end street, defendant attempted to resist arrest by flight on foot. Finally, after defendant was apprehended, he was arrested for reckless operation of a vehicle and resisting an officer. Clearly, these offenses were committed in the presence of the arresting officer. No warrant for defendant's arrest was required. The evidence abandoned by defendant during his flight from a lawful arrest was legally seized and was admissible in evidence. Since the arrest of defendant and seizure of the evidence were lawful, the *1115 seizure of the contraband from defendant's vehicle pursuant to a search warrant issued on the basis of the foregoing arrest and seizure was also lawful. Accordingly, the trial judge did not err in overruling defendant's motion to suppress and in admitting the evidence at trial.
Assignments of Error Nos. 2 and 7 are without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in permitting a state witness, Sergeant Neil Wellbrink, to testify to the number of cigarettes that could be made from one pound of marijuana.
After testifying to his training and experience in drug identification and investigation, particularly in connection with marijuana, Sergeant Wellbrink testified that, based upon his experience in weighing marijuana, a single marijuana cigarette usually weighs between one-half (½) and seven-tenths (7/10) of a gram. Over defense objection, the witness was then permitted to testify that about six hundred forty-seven (647) to nine hundred six (906) cigarettes could be made from one pound of marijuana.
On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony. La.R.S. 15:464. Every expert witness must state the facts upon which his opinion is based. La.R.S. 15:465.
In the instant case, our review of the record convinces us that Sergeant Wellbrink possessed sufficient special training and experience in the field of marijuana to express an opinion in that field. He also stated the facts upon which his opinion was based. Hence, the trial judge properly permitted him to express an opinion as to the number of cigarettes that could be produced from one pound of marijuana. Even assuming arguendo that Wellbrink was not properly qualified to express his opinion on this subject, defendant suffered no prejudice from his testimony since, later at trial, Linda Armstrong, who was duly qualified as an expert criminalist, testified without objection that approximately nine hundred (900) cigarettes could be made from one pound of marijuana.
Assignment of Error No. 4 is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in permitting state witness Officer Isaac Robinson, Jr., to recount in narrative form the actions of defendant in the operation of his vehicle while he was being observed by the officer. We have held that the trial judge has great discretion in this regard. State v. Sheppard, 350 So.2d 615 (La.1977); State v. Peters, 302 So.2d 888 (La. 1974). Unless an abuse of discretion is shown, this court will not reverse a conviction based upon the action of the trial judge in controlling the examination of witnesses. We find no such abuse here.
Defendant further argues that the trial judge erred in permitting the state to lead the witness. No objection on this ground appears in the record. In any event, we do not consider that the state's questioning of the witness was leading.
Assignment of Error No. 5 lacks substance.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the trial judge erred in permitting the state, over defense objection, to question Deputy Sheriff Lester A. Edwards, as to the speed of defendant's vehicle as it was being followed by the deputy. He argues that the question was improper in that it required the witness to express a conclusion. After defendant's objection was overruled by the trial judge, the witness responded that, as he began to follow defendant's vehicle, it was traveling at a lawful rate of speed.
While it is well settled that a lay witness may not give opinion testimony, it is equally well settled that a nonexpert *1116 witness may draw natural inferences from facts personally observed by him. State v. Clark, 340 So.2d 1302 (La.1976); State v. Neal, 321 So.2d 497 (La. 1975). In the instant case, the witness, a deputy with fifteen months experience, was traveling behind defendant's vehicle. Based on his personal observations of the vehicle, the witness could naturally infer whether defendant's vehicle was proceeding at a lawful rate of speed. The trial judge correctly permitted him to so testify.
Assignment of Error No. 6 is without merit.

ASSIGNMENT OF ERROR NO. 8
Defendant contends the trial judge erred in denying his motion for a judgment of acquittal made at the close of the state's case on the ground that the state introduced no evidence that the offense charged was committed in the Parish of Ouachita.
La.Code Crim.P. art. 778 was amended by Act No. 527, § 1 of 1975, effective September 12, 1975, to eliminate the authority of the trial judge to direct a verdict of not guilty in a jury trial. The offense for which defendant was being prosecuted was alleged to have occurred on November 21, 1976. The matter was tried by a jury on May 9-10, 1977. Accordingly, the trial judge had no authority to grant defendant's motion for a judgment of acquittal.
Assignment of Error No. 8 is without merit.

ASSIGNMENT OF ERROR NO. 9
Defendant contends the trial judge erred in refusing to give three requested special charges to the jury. The requested special charges would have instructed the jury that the state was required to prove beyond a reasonable doubt defendant's responsibility for the crime, which could be proven by identification testimony, and, additionally, that the circumstances of a witness' identification of defendant as the perpetrator of the crime, including the witness' opportunity to observe him during the commission of the offense, could be considered in determining the reliability of the witness' identification.
Although defendant in his brief submitted this assignment of error to the court for its consideration without briefing it, we have reviewed his contention and find it to be without merit. In his general charge, the trial judge instructed the jury that the burden was on the state to prove every element of the crime charged beyond a reasonable doubt. Identification of the accused as the perpetrator of the offense was one of the elements of proof required. Furthermore, the trial judge instructed the jury that it had to determine the weight and credibility of a witness' testimony and, in so deciding, it should consider the opportunity which the witness had to observe the perpetrator of the crime and the circumstances surrounding his or her testimony. Hence, defendant's requested special charges were included in the general charge given by the court. La.Code Crim.P. art. 807. Moreover, to have given the requested special charges on the identification issue would have been improper in that it would have pinpointed this issue out of proportion with the other issues in the case. State v. Rose, 271 So.2d 863 (La.1973); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971). We, therefore, conclude that the trial judge properly refused to give defendant's requested special charges.
Assignment of Error No. 9 has no substance.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs with reasons.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I believe that the trial judge erred in denying defendant's motions to suppress and for that reason I would find merit in defendant's assignments of error numbers 2 and 7.
*1117 Officer Robinson testified that when he saw defendant's vehicle he (the officer) was driving in the left-hand lane and defendant was driving a red Chevrolet in the right-hand lane. They looked at each other, and defendant slowed down and moved into the left-hand lane. The officer insisted that defendant was not weaving nor speeding but that he believed that defendant's action in changing lanes was "evasive" and he decided at that time to follow his car.
The officer saw that two persons were in defendant's vehicle but could not see who they were. Based on no factual basis at all, the idea popped into the officer's mind that one of these persons might be the escaped felon he had been searching for earlier in the day. Nothing in the record indicates that there was any known connection between the defendant and the escapee. The officer himself admitted that he did not see the escapee in the vehicle and no car registration check tied the escaped prisoner to the red Chevrolet.
A law enforcement officer has the right to make an investigatory stop of a person "whom he reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor . . . ." C.Cr.P. art. 215.1 (emphasis added). Reasonable cause to stop a person must be determined by whether the officers had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Smith, 347 So.2d 1127 (La.1977); State v. Perigue, 340 So.2d 1369 (La.1976); State v. Cook, 332 So.2d 760 (La.1976). Facts do not furnish probable cause if they are at least as consistent with innocent activity as with guilt, for in such situations they do not connect the individual with criminal activity. State v. Herbert, 351 So.2d 434 (La.1977); State v. Kinnemann, 337 So.2d 441 (La.1976).
Here, defendant's actions in changing lanes was as consistent with innocence as with guilt, and there was no fact linking the escaped prisoner to defendant's car, except a baseless idea which "flashed" into the officer's head. In short, there was no reasonable basis on which the officer stopped defendant Stewart's car, making his arrest and the seizure which followed illegal. State v. Smith, supra; State v. Perigue, supra; State v. Cook, supra. I believe that the majority errs in holding otherwise.
DIXON, Justice (concurring).
I respectfully concur.
If, as argued to us, Officer Robinson had a hunch that an escaped prisoner was possibly in the back seat of defendant's automobile, and undertook, in cooperation with the sheriff's department, to stop the car to determine whether the escaped prisoner was in it, causing the chase which followed, I would be of the opinion that the stop clearly violated the constitutional prohibition against unreasonable searches and seizures.
On the other hand, if the facts were as related in the majority opinion, I would agree with the conclusion reached by the majority. Clearly, the police would have had the right to follow defendant's vehicle, and arrest him if he was guilty of speeding, running stop signs, or reckless driving.
However, my interpretation of the record differs from that of the majority. Nevertheless, the evidence as I read it does disclose that the deputies in a marked police car had probable cause to stop defendant's vehicle.
Robinson did not communicate directly with the sheriff's deputies who made the stop. He called the sheriff's office on his CB radio. Although at trial Robinson denied that he told the sheriff's department that the escaped prisoner was in the automobile (he said he requested that the sheriff stop defendant to see if the escapee was in the car), the deputies who chased the defendant were informed on their radio that an off-duty police officer (Robinson) had seen three people in the vehicle and one of them was "thought to be" the escapee.
In the affidavit made by the sheriff's deputies to obtain the search warrant to make a further search after the defendant had been apprehended, Deputy Edwards *1118 and Deputy Cannon swore that Robinson notified the sheriff's department "that he had Charles Edward Jackson (the escapee) in sight" in the automobile whose make, year, color and license number were then listed.
This testimony makes it clear that the deputy who chased the defendant had information which he should have been able to believe that a Monroe policeman, whose observation should have been reliable, had seen an escaped prisoner in the defendant's automobile.
Therefore, even though the sheriff's deputies intended to stop the defendant's automobile as soon as possible, and before the defendant's automobile began to speed, and before it ran a stop sign, or drove otherwise recklessly, they had probable cause to stop the car to see if it contained the escaped prisoner.
NOTES
[1] In determining whether the ruling on defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Shivers, 346 So.2d 657 (La.1977); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967).